UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | § § § § |
| Plaintiff, | § |
| VS. | §  CIVIL ACTION NO. 4:14-CV-2735 |
| | § |
| CABOT OIL & GAS CORPORATION, | § § |
| Defendant. | § |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Zurich American Insurance Company's ("Zurich") Motion for Summary Judgment, Doc. 17. Also pending before the Court are Defendant Cabot Oil & Gas Corporation's ("Cabot") Motion to Dismiss or Stay, or, in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), Doc. 12; Cabot's Motion to Stay Summary Judgment Proceedings, Doc. 19; Zurich's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion to Dismiss, Doc. 21; Cabot's Motion to Strike Exhibits to Plaintiff's Reply in Support of its Motion for Summary Judgment, Doc. 26; and Cabot's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment. Doc. 26. Having considered the motions, responses, replies, the facts in the record, and the applicable law, the Court grants Zurich's Motion for Summary Judgment. Doc. 17.

**I.      Background**

On April 1, 2011, Zurich issued a Workers Compensation and Employers Liability Insurance Policy ("the Policy") to Cabot, effective until April 1, 2012. Doc. 1-2. On December 15, 2011, Juston O. Taylor, a welder employed by Cabot in West Virginia, was injured on the job by a ruptured oil-gas separator on an oil well. Doc. 1-1 at 3. On July 23, 2013, Taylor filed a

personal injury lawsuit ("the Underlying Lawsuit") against Cabot in the Boone County Circuit Court of West Virginia. Docket at 1, *Taylor v. Cabot Oil & Gas Corp.*, No. 13-C-155 (W. Va. Cir. Ct. filed Jul. 23, 2013). Zurich filed a motion to intervene, and Cabot responded with a motion for declaratory judgment that Zurich owed Cabot a duty to defend and a duty of indemnification. On November 19, 2014, the West Virginia State Court granted both motions. Doc. 12-1, Ex. 2. The Underlying Lawsuit is set for trial on November 17, 2015. Docket at 4, *Taylor* (No. 13-C-155). On September 24, 2014, Zurich filed suit in this Court for a declaratory judgment that the Policy does not cover Taylor's claims in the Underlying Lawsuit. Doc. 1.

## II.     Cabot's Motion to Dismiss

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. In *St. Paul Ins. Co. v. Trejo*, the Fifth Circuit set forth factors a district court must consider in determining whether to dismiss a declaratory judgment:

> "1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy," and, we hold, whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

39 F.3d 585, 590–91 (5th Cir. 1994) (citation omitted). These factors apply to Zurich's claim for declaratory judgment as follows:

**1.     Whether there is a pending state action in which all of the matters in controversy can be fully litigated**

The trial in the Underlying Lawsuit is currently set for November 17, 2015. Docket at 4, *Taylor* (No. 13-C-155). In regard to the matter before this Court, Zurich's liability, the state court granted Zurich's motion to intervene subject to certain limitations. Doc. 12-1, Ex. 2 at 13 ("Zurich is permitted to intervene in this action for the sole purpose of submitting, subject to the Court's approval, special interrogatories to the jury. Zurich will not participate in discovery, nor will it sit at counsel table or be identified to the jury at trial."). Arguably, the matter of Zurich's liability can be fully litigated in the Underlying Lawsuit.

**2.     Whether the plaintiff filed in anticipation of a lawsuit by the defendant**

Zurich did not file this suit in anticipation of a lawsuit by Cabot. Rather, Zurich filed this suit in response to the Underlying Lawsuit.

**3.     Whether the plaintiff engaged in forum shopping**

"[A] court is more likely to find a plaintiff engaged in impermissible forum shopping where the federal action would change the applicable law." *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 Fed. Appx. 316, 321 (5th Cir. 2006). The parties disagree as to which state's law applies and on whether there is a difference between the respective laws that each party argues would apply. Because this suit was filed in the U.S. District Court for the Southern District of Texas, Texas's choice-of-law rules apply. *Atl. Marine Constr. Co. v. U.S.D. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013). The parties disagree as to which substantive law applies. Zurich is not liable under either Texas or West Virginia law. *See infra*.

**4.     Whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist**

As the Fifth Circuit has noted, this factor overlaps with the second and third factors. Together, these three factors address "whether the plaintiff is using the declaratory judgment

process to gain access to a federal forum on improper or unfair grounds." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003). Zurich did not file this suit in anticipation of the state action, and Zurich has not engaged in forum shopping. *Supra* II 2, 3.

**5. Whether the federal court is a convenient forum for the parties and witnesses**

Cabot concedes that this venue is proper under 28 U.S.C. § 1391(b)(1). Cabot speculates that "a more convenient forum may exist," Doc. 11 ¶ 4, but does not argue it would be "unduly burdensome" to litigate here. *Sherwin-Williams Co.,* 343 F.3d at 400 ("The fact that it would not be as convenient for all the declaratory judgment defendants to litigate in federal district court as it would be for them to litigate in the nearest state courthouse does not mean that it is unduly burdensome for them to do so.").

**6. Whether retaining the lawsuit in federal court would serve the purposes of judicial economy**

In *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, the Fifth Circuit found the judicial economy factor "overwhelmingly" supported retention of a similar suit for declaratory judgment of noncoverage:

> [T]he parties here have completed discovery and have resolved all material fact issues. All that remains in this case is the resolution of one, solitary, legal question on which the district court has already been thoroughly briefed. The district court simply needs to make a decision. However, as has been noted repeatedly, if this case were dismissed, the state court, duplicating the work already done in the federal court, would have to "start from scratch." Its resolution of this case would necessarily be significantly delayed.

996 F.2d 774, 779 (5th Cir. 1993). On balance, none of the other factors weigh strongly in favor of dismissal, while resolving the solitary issue of Zurich's liability in this Court would better serve the purposes of judicial economy. For this reason, the Court denies Cabot's Motion to Dismiss. Doc. 12.

**III.     Cabot's Motion to Transfer under 28 U.S.C. § 1404(a)**

As an alternative to dismissal, Cabot moves to transfer the case to the United States District Court for the Southern District of West Virginia.[1] 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Fifth Circuit has set forth private and public interest factors for determining whether a § 1404(a) venue transfer is "for the convenience of parties and witnesses and in the interest of justice." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The private interest factors are:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* The public interest factors are:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or of] the application of foreign law.

*Id.* The factors are "not necessarily exhaustive or exclusive." *Id.* Because the matter before the Court can be resolved without any further discovery based on the terms of the Policy, the private interest factors do not apply. Regarding the first public interest factor, court congestion would arguably be reduced by retention in this Court, since the parties have fully briefed the matter. As for the other three public factors, the issue involves only limited application of foreign law. As noted above, Cabot has conceded this forum is not "unduly burdensome." Doc. 11 ¶ 4. For these reasons, the Court denies the Motion for Transfer. Doc. 12.

---

[1] Transfer to the West Virginia state court under § 1404(a), rather than transfer by dismissal, is not under consideration because § 1404(a) does not authorize a federal court to transfer a civil action to a state court. *Pope v. Atl. Coast Line R.R. Co.*, 345 U.S. 379, 384 (1953).

**IV.     Zurich's Motion for Summary Judgment**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Initially the moving party bears the burden of identifying evidence that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; it does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmovant then can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49.

As explained above in reference to the motion to dismiss, *see supra* Part II (3), Texas choice-of-law rules apply. The parties disagree as to which state's law applies under those rules. Zurich argues the Court should determine which state's law applies in accordance with § 188 of the Restatement (Second) of Conflicts of Laws. *See Minn. Mining and Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735 (Tex. 1997) ("When evaluating choice-of-law issues in contractual disputes, we consider the facts of the case under the 'most significant relationship' test set forth in section 188 of the *Restatement (Second) of Conflicts of Laws*."). Section 188 states:

> In the absence of an effective choice of law by the parties . . . , the contacts to be taken into account in applying the principles of § 6[2] to determine the law applicable to an issue include:

---

[2]Restatement (Second) of Conflict of Laws § 6 (1971) states, in relevant part:

6 / 13

>   (a) the place of contracting,
>   (b) the place of negotiation of the contract,
>   (c) the place of performance,
>   (d) the location of the subject matter of the contract, and
>   (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188 (1971). Zurich argues Texas law applies, because Texas was theh place of contracting and the place of business of the parties. Doc. 25 at 2 ("[Zurich] issued the Policy in Texas through a Texas producer at Cabot's principal place of business in Houston, Texas; and the Policy was issued in the course and scope of [Zurich's] Texas business.").

Cabot argues West Virginia law applies, because negotiation and performance of the Policy occurred in West Virginia, in the sense that Zurich consulted with Cabot in West Virginia regarding the defense of the Underlying Lawsuit. *See Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 594 (5th Cir. 2008) (holding the place of performance was Mississippi, where insurer defended insured). Cabot further argues West Virginia law applies, because West Virginia was the principal location of the Policy's insured risk, citing another section of the Restatement that specifically addresses insurance policies:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

---

> [T]he factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 193 (1971). The Fifth Circuit has held "§ 193 is pertinent only if there is, in fact, a single state which can be identified as the 'principal' location of the risks insured by a policy." *Hartford*, 524 F.3d at 594. *Compare Nichols v. Anderson*, 788 F.2d 1140, 1142 (5th Cir. 1986) (applying § 193, Arkansas law governs because "[t]here is no question that Woods's tractor-trailer was at all pertinent times primarily garaged in McCrory, Arkansas"), *with Hartford*, 524 F.3d at 594 (rejecting § 193 where "[i]t is inescapable that the policies at issue insure risks in several states"), *and Evangelical Lutheran Church in Am. v. Atl. Mut. Ins. Co.*, 169 F.3d 947, 950 (5th Cir. 1999) (rejecting § 193 where "the risk here arguably cannot 'be located . . . principally in a single state'"; "[t]he risk here involves the possibility that a pastor trained in Pennsylvania will cause injury in some other state"). The multi-state insurance policies in *Hartford* and *Evangelical Lutheran* did not contain provisions that distinguished between the states where the insured risk was located. Zurich's policy, however, contains a specific provision for insured risks in West Virginia ("**WEST VIRGINIA EMPLOYERS LIABILITY INSURANCE INTENTIONAL ACT EXCLUSION ENDORSEMENT**") (hereinafter, "West Virginia Endorsement") referring to a West Virginia statute. Doc. 1-2 at 138 (providing that the Policy does not cover "bodily injury intentionally caused . . . by your deliberate intention as that term is defined by W. Va. Code § 23-4-2(d)(2)"). For this reason, the Court finds West Virginia law applies.

Under West Virginia law, "an insurer must look beyond the third party's pleadings and conduct a reasonable inquiry into the facts in order to ascertain whether the claims asserted may come within the scope of the coverage," *Farmers & Mechs. Mut. FireIns. Co of W. Va. v. Hutzler*, 447 S.E.2d 22, 25 (W. Va. 1994), but "[d]etermination of the proper coverage of an

insurance contract when the facts are not in dispute is a question of law." *Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895, 904 (W. Va. 2004).

Here, the Underlying Complaint alleges Cabot acted with "deliberate intent as described in Chapter 23, Article 4, Section 2(d)(2)(ii), of the *Code of West Virginia*." Doc. 1-1 at 4. The West Virginia Endorsement excludes bodily injury resulting from "deliberate intention as that term is defined by W. Va. Code § 23-4-2(d)(2)." Doc. 1-2 at 138. Given the fact that subsection (d)(2) includes both subsection (d)(2)(i) and subsection (d)(2)(ii), the claim is excluded by the Endorsement. The West Virginia Supreme Court reached the same conclusion in *W. Va. Emp'rs' Mut. Ins. Co. v. Summit Point Raceway Assocs., Inc.*, 719 S.E.2d 830, 842–43 (W. Va. 2011) (holding insurer not liable for a (d)(2)(ii) claim under "West Virginia Intentional Injury Exclusion Endorsement" excluding claims under § 23-4-2; "[b]y stating that the insurance did not cover 'any bodily injury for which you are liable arising out of West Virginia Annotated Code § 23-4-2,' it is clear that there was no coverage for deliberate intent liability arising from either W. Va. Code § 23-4-2(d)(2)(i) or W. Va. Code § 23-4-2 (d)(2)(ii)").

Cabot argues the West Virginia Endorsement is not enforceable for lack of fair notice. The requirements for fair notice of insurance exclusions are set forth in syllabus points[3] in *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488, 496 (1987), *abrogated on other grounds by Potesta v. U.S. Fid. & Guar. Co.*, 504 S.E.2d 135 (1998).

> An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.

---

[3] West Virginia has a unique constitutional provision requiring opinions to enumerate precedential rules of law in syllabus points. W. Va. Const. art. VIII, § 4; Syl. pt. 1, *State v. McKinley*, 764 S.E.2d 303, 306 (2014) ("Signed opinions containing original syllabus points have the highest precedential value because the Court uses original syllabus points to announce new points of law or to change established patterns of practice by the Court.").

Syl. pt. 10, *id.* These requirements overlap somewhat with the doctrines of reasonable expectations and strict construction of ambiguous terms in insurance contracts:

> With respect to insurance contracts, the doctrine of reasonable expectations is that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."

Syl. pt. 8, *id.* (citing Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv. L. Rev. 961 (1970)); Syl. pt. 4 ("It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured."); Syl. pt. 9, *id.* ("Where ambiguous policy provisions would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted."). Alternatively, fair notice may be shown by proof of actual notice. *Id.* at 496 ("Of course, the insurer may avoid liability by proving that the insured read and understood the language in question, or that the insured indicated his understanding through words or conduct.").

Cabot does not argue that fair notice requirements were not met but argues Zurich "has presented absolutely no competent summary judgment evidence demonstrating that [the West Virginia Endorsement] was ever brought to Cabot's attention." Doc. 20 at 4 (citing Syl. pt. 7, *id.* ("An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion."). As noted, the West Virginia Supreme Court upheld a deliberate-intent exclusion nearly identical to the one in the Policy, on grounds that it was "conspicuous, plain, clear, and obvious in excluding coverage for deliberate intent actions." *W. Va. Emp'rs' Mut.*, 719 S.E.2d at 843. The trial court had ruled on summary judgment, but the supreme court decided based solely on a review of the exclusion. *Id.*

at 842. The issue of whether the exclusion was disclosed or "brought to the attention of the insured" was not even raised. If an exclusion is "conspicuous, plain, clear, and obvious," it is up to the party raising fair notice to overcome the presumption that it was brought to his attention. Cabot has introduced no such evidence. *See Am. States Ins. Co. v. Surbaugh*, 231 W. Va. 288, 301 n.14 (2013) ("Although dicta appears in footnote 6 of *McMahon* that might suggest an insured does not have a duty to read a policy, the opinion does not stand for such an abhorrent proposition. As indicated in *Luikart,* the dicta in *McMahon* merely relaxed the duty to read in the limited context of an ambiguous contract and the application of the doctrine of reasonable expectations.").

Taylor attempts to avoid the exclusion by raising an alternative claim of negligence. The Underlying Complaint alleges:

> On December 15, 2011, Plaintiff Juston O. Taylor, acting in the scope of his employment for Defendant Cabot, and in furtherance of that employment, was attempting to stop a natural gas leak on the float valve hammer union on the Separator at Well #36 which, at the time, was under pressure. Plaintiff Juston O. Taylor was performing his work on the Separator, when the float valve hammer union exploded from the Separator, which resulted in a catastrophic, sudden and massive release of air pressure and flying parts that struck him, causing his severe and permanent injuries, all as a result of Cabot's *negligence* and deliberate intent.

Doc. 1-1 at 3 (emphasis added). Shawna Taylor, the wife of Juston O. Taylor, also alleges damages such as loss of consortium "as a result of [Cabot's] negligence." Doc. 1-1 at 14. Cabot maintains that these bare allegations of negligence in the Underlying Lawsuit "are clearly susceptible to an interpretation that at least some of [the Underlying Plaintiffs'] claims are **not** covered by the intentional act exclusion to the Policy, and consequently to an interpretation that could impose liability for risks the Policy covers." Doc. 20 at 12 (emphasis in original).

It is undisputed that prior to filing the Underlying Lawsuit, Taylor received workers' compensation from Zurich for his injuries sustained while working for Cabot, pursuant to Part

One of the Policy. Doc. 13-1 ¶ 5; *see* Doc. 1-2 at 25–26 (Part One of the Policy). By participating in the workers' compensation program, Cabot became immune from employees' common-law tort claims such as negligence. W. Va. Code Ann. § 23-2-6 (West 2003) ("Any employer . . . who subscribes and pays into the workers' compensation fund . . . is not liable to respond in damages at common law or by statute for the injury or death of any employee."); *see Smith v. Monsanto Co.*, 822 F. Supp. 327, 330 (S.D.W. Va. 1992) ("[T]he legislative immunity afforded employers by [W. Va. Code § 23-2-6] is 'designed to remove *negligently* caused industrial accidents from the common law tort system.'").[4] Cabot cites one case where the Supreme Court of Appeals of West Virginia held an insurer was liable for a negligence claim where the employer was in default of its obligations to the workers' compensation fund. *Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.*, 553 S.E.2d 257, 265 (W. Va. 2001). Cabot has not alleged it was in default of its obligations to the workers' compensation fund.

### IV.  Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Zurich's Motion for Summary Judgment (Doc. 17) is **GRANTED**, and

**ORDERED** Cabot's Motion to Dismiss or Stay, or, in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 12) is **DENIED**, and

**ORDERED** that Cabot's Motion to Stay Summary Judgment Proceedings (Doc. 19); Zurich's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion to Dismiss

---

[4] *See* 9A Couch on Ins. § 132:57 n.34 (3d ed. 2014):

> Employers' liability insurance is traditionally written in conjunction with workers' compensation insurance and is intended to fill gaps by providing protection in those situations in which employee has right to bring tort action despite provisions of workers' compensation statute, or employee is not subject to workers' compensation law, and generally these two types of coverage are mutually exclusive.

(Doc. 21); Cabot's Motion to Strike Exhibits to Plaintiff's Reply in Support of its Motion for Summary Judgment and Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 26) are **DISMISSED** as **MOOT**.

SIGNED at Houston, Texas, this 23rd day of September, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE